Alice LAYTON, Respondent,

v.

John G. PALMER, Appellant.

No. 45935.

Supreme Court of Missouri.

Division No. 2.

Jan. 13, 1958.

Rehearing Denied Feb. 10, 1958.

Carstarphen & Harvey, Hannibal, Oliver Nolen, Paris, for appellant.

Rendlen & Rendlen, Hannibal, Robert L. Hawkins, Jr., Jefferson City, for respondent.

STORCKMAN, Presiding Judge.

This is an action to recover damages for personal injuries received by plaintiff when the automobile in which she was a passenger was driven from the pavement onto the shoulder of the highway and overturned. Plaintiff claims the accident was caused by bales of hay falling into the path of the automobile from an approaching motor truck owned and operated by the defendant. Plaintiff's petition, evidence and submission were predicated on the res ipsa loquitur doctrine. The jury found for the plaintiff in the sum of $8500; from the judgment rendered thereon the defendant appealed. The parties will generally be referred to as they were denominated in the trial court.

Defendant's contention that the evidence did not justify the submission of plaintiff's case under the res ipsa loquitur doctrine calls for a rather detailed statement of the proof. On April 29, 1954, the plaintiff and her husband, aged 61 and 60 respectively, were en route from their home in Perryville, Missouri, to Des Moines, Iowa, traveling north on U. S. Highway No. 61. At about 10:30 a. m. they arrived at a place about two miles south of New London, Missouri. At that time and place the defendant was driving his motor truck loaded with hay south on Highway 61. The hay was in bales with rectangular sides approximately 14 inches by 18 inches at the ends and about four feet long. The hay in each bale was bound together by wires. At the place in question the highway, of concrete construction 22 feet wide, was straight and fairly level. It was in good condition and a center line marking divided the northbound and southbound lanes of travel. The day was clear and the pavement dry.

Plaintiff's evidence tended to prove that the automobile in which plaintiff was a passenger, just prior to the occurrence was traveling north in the eastern lane at a speed of about 55 to 60 miles per hour. When the two motor vehicles were about 200 feet apart at least three bales of hay fell from the truck onto the pavement. One bale "was tumbling" in the path of the automobile and toward it. One of the bales, according to plaintiff's evidence, came to rest about the middle of the northbound lane with its length perpendicular to the center line of the highway; one on the center line and generally parallel with it; and another in the southbound lane. When the first bale started to fall plaintiff's husband applied the brakes and skidded the tires of his automobile on the pavement for a distance of 132 feet as evidenced by skid marks measured by a highway patrolman. The automobile then went onto the shoulder on the east side, which was 11 feet wide and sloped toward a trench referred to as a "grader ditch" and overturned. When the automobile came to rest it was on its right side headed east and crosswise of the small ditch.

That morning at his farm four and a half miles north of Center, Missouri, the defendant, aged 27, with the assistance of his brother, had loaded the baled clover hay onto the defendant's truck for delivery to a purchaser. The motor truck was a flat bed farm truck with "gravel" sides 12 inches high. The bales of hay were loaded on the truck in five layers and the load was secured to the truck bed by chains which were passed over the bales and tightened.

The defendant, accompanied by his brother, drove the loaded truck south to Center where they inspected the load and picked up John Howald, who was to assist in the unloading. From there the defendant drove east on Missouri Highway No. 19 a distance of nine miles to its intersection with U. S. 61, thence south for approximately two miles on U. S. 61 to the point where the accident occurred. His truck was running at a speed of 35 to 40 miles per hour.

Defendant's attention was attracted to the automobile in which plaintiff was riding by the application of brakes and sliding of tires as it passed him. He looked into his rear vision mirror and saw that bales of hay had fallen from his truck. He immediately pulled off to his right and parked the truck on the western shoulder of the highway. He 'and his companions ran bank to the overturned automobile. By the time they arrived the plaintiff's husband had climbed out of the left side and by their combined efforts the automobile was righted and the plaintiff was released.

After being removed from the automobile, the plaintiff regained some degree of consciousness and was taken to a hospital in Hannibal where she remained for several days. She received further treatment in St. Louis and in Perryville. Since the verdict is not directly attacked as being excessive, it is unnecessary to detail plaintiff's injuries and treatment. It is sufficient to say that her nose was broken, resulting in a deviated septum; her hearing, defective before the accident, was further impaired. She received numerous cuts, bruises and abrasions, principally about her face, head and shoulders.

The defendant's evidence tended to prove that only three bales fell from the truck and two of them landed on the right shoulder entirely off of the highway. The other fell onto the pavement and came to rest on the center line extending about a foot or a foot and a half into the northbound lane.

■ Defendant's first contention is that his motion for a directed verdict should have been sustained. Since the jury found for the plaintiff, we must, in reviewing the evidence to determine its sufficiency, consider the evidence in the light most favorable to the plaintiff and give her the benefit of all reasonable inferences from it. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280.

■ It is firmly established in our jurisprudence that the res ipsa loquitur doctrine only applies when: (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. Clark v. Linwood Hotel, 365 Mo. 982, 291 S.W.2d 102, 104–105, and McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559, 92 A.L.R. 641.

■ Judged by these fundamental principles we have no difficulty in holding that the plaintiff made a submissible case within the res ipsa loquitur rule. The jury could reasonably find that bales of hay would not ordinarily fall from a motor vehicle traveling on a public highway if those in charge had used the required care in loading, securing and transporting the hay. The nature and character of the occurrence bespeaks negligence. As said in Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003: "The occurrence would seem to speak negligence, and it is easy to see why an injured plaintiff would not know what specific negligence did cause it."

Further the character of the occurrence is such as to bring it within the category of injuries from falling objects or substances to which the doctrine is frequently applied. Noce v. St. Louis-San Francisco R. Co., 337 Mo. 689, 85 S.W.2d 637 (a metal hub liner thrown from a passing engine); Forsch v. Liebhardt, 5 N.J.Super. 75, 68 A. 2d 416 (a cinder block fell from a passing

motor truck); Golden v. R. L. Greene Paper Co., 44 R.I. 226, 116 A. 577 (a roll of paper fell from a passing motor truck); Alexander v. Star-Chronicle Pub. Co., 197 Mo.App. 601, 198 S.W. 467 (a bundle of papers thrown from a motor vehicle); 65 C.J.S. Negligence § 220(12), p. 1035; 38 Am.Jur. 1003, Negligence, § 306.

Nor can there be any question that the negligence inferrible is reasonably attributable to the defendant. All of the evidence tends to prove that the truck and its load, being the instrumentalities involved, were under the actual control and active management of the defendant at all times in question. The defendant also possessed superior knowledge or means of information with respect to what caused the bales to fall from the truck. He had the primary knowledge and information with respect to the loading, fastening and transporting of the bales, as well as the continuing opportunity of inspection before and after the accident.

The defendant relies principally upon statements in Grindstaff v. J. Goldberg & Sons, 328 Mo. 72, 40 S.W.2d 702, 705, to defeat the application of the doctrine to the facts of this case. Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, 81, holds that the rule of application as stated in the Grindstaff case, "unless qualified in its application, is too broad," and points out that the negligence in Grindstaff may have been attributable to a fellow servant for whose negligence the defendant employer was not responsible and which was not excluded by plaintiff's evidence. This element was also of decisive effect in Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95. This involves questions of control of the instrumentalities not present in the instant case.

Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S.W.2d 693, loc. cit. 701, decided at the same time as Grindstaff, held the doctrine of res ipsa loquitur applicable to the abnormal automatic starting of a machine within the master's control and stated this rule: "The attendant facts must be such as to raise a reasonable inference of defendant's negligence but not necessarily such as to exclude every other inference. The jury must draw the inference of negligence from the facts proven, and it must be a reasonable one, but the rule applicable to circumstantial evidence and reasonable doubt in criminal cases does not apply." The correctness of this holding was recognized by the writer of the Grindstaff case. See 40 S.W.2d loc. cit. 705, col. 2. Maxie v. Gulf, Mobile & Ohio R. Co., 358 Mo. 1100, 219 S.W.2d 322, 325 [5], 10 A.L.R.2d 1273, citing Gordon and other cases as authority, states the rule thus: "A plaintiff to come within the doctrine need not show such a state of facts surrounding the accident as excludes every reasonable hypothesis except defendant's negligence. The attendant facts must raise a reasonable inference of defendant's negligence but they need not also exclude every other inference."

The Grindstaff ruling must be viewed in the light of these other decisions, as well as the facts of the particular case. In the case at bar, the evidence did not tend to involve any agency other than the defendant as a causative factor in the falling of the bales.

The defendant suggests: "True the hay fell but that may be from a latent defect in the mechanism of the ties (wire) of the individual bale to the end that the bale broke before it fell and for that latent defect defendant is not liable." There was evidence that the wire on one of the fallen bales was found to be broken after the accident, but no evidence tending to prove it was broken before the bale fell. The hay was baled by defendant in the summer of 1952 and had been in his barn since that time, presumably with the baling wires intact. Asked by his counsel about the time of the wire's breaking, the defendant testified: "No, I don't know when it broke." This further question and answer followed: "Q. You have no knowledge of knowing whether that wire had a latent defect or not? A. No, it could have." The evi-

dence does not tend to establish that the wire broke while the bale was still on the truck and because of a latent defect. In Noce v. St. Louis-San Francisco R. Co., 337 Mo. 689, 85 S.W.2d 637, the defendant's evidence tended to show due care in the inspection and maintenance of the hub liner in good condition and in proper alignment. The error claimed was in the Court's refusal of its accident instruction on the theory that the break in the hub liner was caused by a latent defect. In disposing of the contention, the court stated, 85 S.W.2d loc. cit. 642 [8]: "However, there was no evidence tending to show that any inherent, latent, or concealed defect existed in the metal or opinion or other evidence offered tending to show the intervention or operation of some force or action which could not have been timely known or discovered by the exercise of due care. So the issue was simply defendant's negligence vel non. In the state of the evidence we hold the trial court did not err in refusing the accident instruction."

Defendant also urges that plaintiff's case is built on speculation, conjecture and suppositions which take flight when positive evidence appears, and that inferences cannot be pyramided. However, we do not regard the evidence in support of plaintiff's case as violative of the rules for which the defendant contends. The proof was sufficient for the jury to make an inference of negligence directly from the facts and circumstances in evidence.

■ Defendant's evidence as to the manner in which the hay was loaded, tied down, transported and inspected, though uncontradicted, did not have the effect of destroying plaintiff's prima facie case. Clark v. Linwood Hotel, 365 Mo. 982, 291 S.W.2d 102, 105 [3], is determinative of this evidentiary situation: "A prima facie showing of negligence under that doctrine raises a substantial factual inference of defendant's negligence which amounts to evidence, as distinguished from a mere procedural presumption, that does not disappear upon the submission of evidence tending to exculpate defendant, but remains in the case as evidence sufficient to support an affirmative finding for plaintiff." See also Lober v. Kansas City, Mo., 74 S.W.2d 815, 823 [13].

■ The defendant correctly contends that in a res ipsa loquitur case the burden remains on the plaintiff throughout. McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 563, 92 A.L.R. 641. Instruction No. D–2, given at defendant's request, so instructed the jury.

Defendant states that the "action of plaintiff's driver must be integrated into consideration of our case." Obviously, neither the plaintiff nor her husband had anything to do with the hay on the truck or its falling into the path of the automobile, which is the occurrence upon which defendant's negligence is predicated.

The trial court did not err in refusing to direct a verdict in favor of the defendant.

■ Next, the defendant asks us to declare as a matter of law that the negligence of plaintiff's husband, as driver of the automobile, was the sole cause of plaintiff's injuries. We have previously held there was sufficient evidence of defendant's negligence to justify the submission of plaintiff's case to the jury. There was a sufficient showing of proximate cause since: "Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury." Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78 [8]. See also Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 811 [4].

■■ The evidence does not establish, as the defendant contends, that Mr. Layton could have stopped his automobile before he reached the place where baled hay had fallen to the pavement. It must be kept

in mind that the two motor vehicles were approaching each other, one at 55 to 60 and the other at 35 to 40 miles per hour. The first bale fell from the truck when the automobile was about 200 feet away, and, carried by its own momentum, tumbled along the pavement toward the automobile, thereby lessening the distance available to avoid hitting the bale. Other bales were also dislodged and fell, according to plaintiff's evidence. Following recognized reaction time for effective application of his brakes, the Layton car skidded on the pavement for 132 feet before going onto the shoulder and overturning. The automobile came to rest about even with or slightly to the north of the first bale that fell. There is no evidence upon which we could declare as a matter of law that Mr. Layton could have stopped his car without injury to his wife. The question of his negligence as a sole cause was submitted to the jury by Instruction No. D–3 and found against the defendant. Even if plaintiff's huband was negligent and his negligence contributed to cause the injuries, the defendant would not be relieved because two or more persons may be liable for another's injury by reason of their combined negligence. Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831, 833 [6].

The testimony of two of the physicians who treated the plaintiff was taken by deposition and read into evidence. In the cross-examination of Dr. Edward John Gohan there was a series of questions and answers relating to his bill for services and he testified the amount was $350. Dr. Everett James Javaux was interrogated about medical expenses in his direct examination, and he testified that plastic and osteo-plastic surgery costs were generally quite high because it was considered a sort of luxury and better fees were charged for it than were charged by general surgeons; the fee for the operation involving the scar on the eye would be a minimum of $100 and for the nose would be over $500, both exclusive of hospital bills. At the trial plaintiff's objection to this testimony and re-

quest that it not be read to the jury was sustained. The ground of the objection was that the items were special damages not pleaded and for which the plaintiff's husband was liable. The defendant made offers of proof which were declined. The defendant claims the exclusion of such testimony was error.

■■■■ Medical and surgical expenses are special damages and evidence of such expense is not admissible under a prayer for general damages. Blunk v. Snider, 342 Mo. 26, 111 S.W.2d 163, 166 [9]; Walquist v. Kansas City Rys. Co., 292 Mo. 34, 237 S.W. 493, 495 [6]; 25 C.J.S. Damages § 131, p. 752. These items were not pleaded and certainly on defendant's objection they would not have been admissible if offered by the plaintiff. However, this represents a switch of the usual situation in that the defendant here is claiming it was error to exclude the evidence.

■■■ In support of his contention the defendant cites cases holding generally that depositions filed become the common property of both sides and may be read by either party. Both parties rely upon Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469, 473, which does not completely answer our problem. Section 492.330, RSMo 1949, V. A.M.S., provides that objections to the competency or relevancy of any question put to or given by a deposition witness "may be made in the same manner and with the like effect as if such witness were personally present." If the medical witnesses had been personally present at the trial the plaintiff would not have been required to adduce the proof which was excluded, since it was not within the issues. Nor would it have been admissible on cross-examination unless the defendant could show its materiality to the issues. In order to convict the trial court of error, the competency or relevancy of the excluded evidence must be demonstrated and this has not been done. We find no prejudicial error, and the assignment is denied.

In plaintiff's rebuttal Branham Rendlen, one of plaintiff's counsel, testified that he took plaintiff's Exhibit B, a photograph of the scene of the accident, which had been previously introduced in evidence. At the Court's suggestion, a magnifying glass was obtained which the jury was permitted to use in viewing the exhibit. The defendant claims error because, as stated in his motion for new trial, "the Court, without request of counsel and by way of aiding and giving a helping hand to the plaintiff to the prejudice of the defendant, ordered a magnifying glass for the jury on exhibits that were marked by plaintiff's counsel, who took the stand to testify and create the exhibits so marked."

The defendant has cited no authority holding that it was error to permit a jury to use a magnifying glass to view an exhibit. What appears to be the established rule, and one of which we approve, is stated in 89 C.J.S. Trial § 470, pp. 109–110, as follows: " * * * it is not improper for the jury to use a magnifying glass or mechanical device to aid their investigation of handwritings or exhibits which have been admitted in evidence * * *." See also Alexander v. Blackburn, 178 Ind. 66, 98 N.E. 711, Ann.Cas. 1915B, 1091; State v. Everson, 166 Wash. 534, 7 P.2d 603, 80 A.L.R. 106; Evans v. Commonwealth, 230 Ky. 411, 19 S.W.2d 1091, 66 A.L.R. 360.

Nor can we agree with the defendant that the trial court became "an advocate" and exhibited partiality for the plaintiff in suggesting and obtaining the magnifying glass for the jury's use. The defendant cites a number of cases which properly stress the need for a trial court to maintain a strictly impartial attitude at all times. We find no support in the record for the contention that the conduct of the trial court violated the standards of behavior established by these cases. The record discloses that during the cross-examination of the witness a definite controversy developed between counsel for the defendant and the

witness as to whether certain objects in the picture were parts or whole bales of hay. When one of defendant's counsel stated that he would like to exhibit the photograph to the jury and "let them see," the Court replied: "The Court is going to let the jury have access to the picture." After further cross-examination and near its end, the Court stated: "The Court will make this suggestion, if there is a magnifying glass here the jury will be permitted to use that." Defendant objected "to the matter of seeking to pursue this matter any further here with other instruments." The Court again announced that he was going to permit the jury to have a magnifying glass "if there is one here." Later the sheriff produced a magnifying glass and this occurred: "The Court: The Court will not permit any one to point out things to the jury, they may do it themselves. (The magnifying glass and exhibit are handed to the jury.) The Court: Do you see the marks that were placed on by Judge Rendlen? A. Juror: Yes, sir." The purpose of the Court, so far as the record discloses, was to enable the jurors to see the objects better regardless of what they were. There is nothing to indicate he was taking either side of the controversy. In fact, his words indicate otherwise. At one time during the examination the Court stated: "After all the jury is the judge of whether this is a fair representation of two or more bales of hay, or what it is. That is for the jury to determine. This Court has no authority to pass upon that." And again: " * * * the jury is the one to pass on the merits of that particular picture." Under the circumstances, the Court did not abuse its discretion in suggesting and securing a magnifying glass. In view of this complaint we have carefully examined the entire record for indications of bias and prejudice and we have found none. On the contrary, we are impressed by the Court's fairness, particularly in the matter of rulings on evidence and the giving of instructions.

The defendant next charges error in the giving of Instruction P–1, which is a ver-

dict-directing instruction following the form suggested in Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1004. In accordance with our previous ruling the instruction was not erroneous because it submitted a recovery under the res ipsa loquitur doctrine.

The defendant further says Instruction P-1 is erroneous because it permits plaintiff to recover if plaintiff's driver was "compelled" to drive off the pavement without mentioning the "11 foot shoulder before there was a ditch." No cases are cited. The written argument does not expand the statement of the point, but rather shifts the emphasis to a failure to require a finding that the driver could not have stopped in the clear distance ahead and was compelled to drive off of the pavement. However the contention is viewed, it goes to negligence of plaintiff's husband which would not excuse the defendant if his negligence combined with that of the husband to produce the injury. State ex rel. Hauck Bakery Co. v. Haid, 333 Mo. 76, 62 S.W.2d 400, 402 [4].

 The defendant next says that the instruction is defective in that it fails to require a finding that the car turned over because of defendant's negligence and therefore the jury was not required to find proximate cause. In addition to what we have previously said, it is sufficient to point out that the instruction directly requires a finding that the defendant was negligent and that "the plaintiff's injuries, if any, were directly caused by the defendant's negligence." Obviously it is not necessary that each of the facts in the chain of circumstances be separately attributed to defendant's negligence, so long as the ultimate fact of injury, without which there can be no recovery, is found to be directly caused by defendant's negligence.

 Further, the defendant says that the instruction does not require a consideration of circumstantial evidence. The essence of this complaint is that the instruction uses the words "are sufficient evidence of facts and circumstances to warrant" while the language recommended by the Harke case, supra [335 Mo. 1104, 75 S.W.2d 1004], is "are sufficient circumstantial evidence to warrant." The difference in these two phrases is strictly grammatical and not in substance. The jury could not have been misled or confused by the term used. In Moehle v. St. Louis Public Service Co., Mo.App., 229 S.W.2d 285, 290, an instruction was held not to be erroneous which entirely omitted the word "circumstantial" and simply said "are sufficient evidence to warrant." The claims of error directed against Instruction P-1 are denied.

Plaintiff's Instruction No. P-4 dealt with the question of the negligence of plaintiff's husband in driving the automobile, but did not direct a verdict. It hypothesizes facts beginning when plaintiff's husband was suddenly confronted by bales falling from the truck and directs the jury if it finds he "did not have sufficient time to determine with certainty the best and safest course" and that he applied his brakes and turned to his right to avoid colliding with the bales and in doing so exercised the highest degree of care, then the driver of the automobile was not negligent in driving from the pavement onto the shoulder of the highway. Defendant complains of this instruction on the ground that the giving of a "so-called emergency instruction" is always error "unless it requires a finding of the jury that the emergency was not brought on by the antecedent or prior negligence of the subject of the instruction," citing the cases of McDonnell v. St. Louis Public Service Co., Mo., 249 S.W.2d 412, and Rohde v. St. Louis Public Service Co., Mo., 249 S.W.2d 417. In both these cases the antecedent negligence omitted was that of the party whose liability was directly in question, not that of a person not a party to the suit.

 The only way in which the defendant could be absolved of liability was for the jury to have found that the accident and plaintiff's injuries occurred with-

out negligence on defendant's part. His Instruction D-3 submitted the issue of whether the negligence of plaintiff's husband was the sole cause of his wife's injuries. The beginning hypothesis of this Instruction D-3 is that "plaintiff's driver did so operate his automobile on Highway # 61, in Ralls County, south of New London, as to cause same to go out of control and move and go to the right from the pavement and across the eleven foot shoulder, if you so find, and into the grader ditch and turn over," and if the jury found that "said acts of plaintiff's driver in so operating the automobile" were the sole cause of plaintiff's injuries and that the defendant was not negligent, the verdict should be for the defendant. Thus it will be noted that defendant's own instruction did not hypothesize any negligent acts antecedent to those dealt with in Instruction P-4 of which defendant now complains. The defendant is in no position to complain on appeal because of an omission from plaintiff's instruction where the defendant's instruction contains the same omission. Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 917 [11]; Mahan v. Baile, 358 Mo. 625, 216 S.W.2d 92, 94 [5]; Banks v. Koogler, Mo., 291 S.W.2d 883, 888 [11]. The defendant has failed to demonstrate that antecedent or prior negligence of the plaintiff's husband tended to create the emergency. We cannot find the instruction to be prejudicially erroneous.

■ Instruction No. P-6, given at plaintiff's request, is a measure of damages instruction. Defendant's complaint is that it does not limit the recovery for loss of hearing to that caused by the accident. Plaintiff conceded that her hearing was impaired prior to the accident, but her evidence tended to prove that there was a further loss of hearing as a result of the accident.

This instruction was general and directed the jury to assess damages "for the pain and suffering of mind and body that she has already endured on account of her alleged injuries, and for such as she is reasonably likely to suffer therefrom in the future, and for any permanent physical disability, if any you find, which the jury may find and believe from the evidence, the plaintiff has sustained by reason of such injuries." The defendant suggests that "alleged injuries" refers to the pleadings, but we do not think it is subject to that construction. Plaintiff's petition was not read to the jury. The jurors must have understood that the term referred to the allegations or claims of injuries made by the evidence.

■ We cannot say that the instruction permits a recovery for antecedent impairment of plaintiff's hearing. However, if it were doubtful we think the defect would be clarified by Instruction No. P-5 relating to and defining damages, of which the defendant makes no complaint. Instruction P-5 makes it clear that the defendant's responsibility is for the "ill effects shown in the evidence, if any, which naturally and necessarily followed the injuries, if any, in the condition of health which plaintiff was at the time." Instruction P-5 further recognizes that the plaintiff did not have "normal hearing prior to the injury." The instructions should be read together and considered as a whole. If, when so read, the instructions are harmonious, clear and complete, error cannot be allowed because one of them, considered alone, is defective. Banks v. Koogler, Mo., 291 S.W.2d 883, 890 [21]; Nelson v. O'Leary, Mo., 291 S.W.2d 142, 148 [14]. We find these two instructions are not in conflict but tend to complement each other and that the jury could not have been misled or confused in the respect the defendant alleges.

The judgment should be and is accordingly affirmed.

All concur.